*Henry Day, (George Waddington, of counsel,) for appellant. Martin J. Keogh, for respondent, the county clerk.*

DYKMAN, J. This is an appeal from an order denying the motion of the plaintiff to require the county clerk of Westchester county to allow the sum of $23.40 paid to the Lawyers' Title Insurance Company for searches in this action. The action is for the foreclosure of a mortgage, and the clerk refused to tax the sum paid for searches because they were not official, and the special term affirmed the taxation. No charges can be taxed for disbursements, except such as are legal and necessary. If a lawyer hires a private individual to make a search for him, the amount paid him would not be a legal disbursement. But if the lawyer obtains an official search the case is different. This Lawyers' Title Insurance Company seems to be organized for the purpose of making searches respecting the title to real property, and holds itself out for employment by all persons, but it sustains no official position, and its searches have no official force or effect. So the money paid to such company for search stands in the same light as money paid to a private individual. We concur in the view taken at the special term, and the order appealed from should be affirmed, with $10 costs and disbursements.

---

EBERLIN *v.* PALMER.

*(Supreme Court, General Term, First Department. July 18, 1890.)*

PAYMENT—APPLICATION.

Plaintiff's assignor was a stock-broker, and indebted to defendant, his mother, to whom he had given a policy of life insurance as collateral security. In an action to recover the policy, the question involved was the amount of the indebtedness still unpaid. Assignor's books contained two accounts, with entries in reference to his indebtedness to defendant,—one an account of the principal; the other an interest account, in which were entered every month the amounts of interest paid or credited to his creditors. The interest account showed, and defendant admitted, that assignor paid defendant a certain amount every month, for several years, which was in excess of the interest due her. These payments were not referred to in the account of the principal debt. *Held*, that the payments were not intended to and did not apply to any extent on the principal debt.

Appeal from special term, New York county.

Action by Charles Eberlin, as assignee of George H. Palmer, against Ann Palmer. From a judgment for defendant, plaintiff appeals.

Argued before VAN BRUNT, P. J., and BARTLETT, J.

*James L. Bishop,* for appellant. *Maclay & Forrest,* for respondent.

BARTLETT, J. This action arose out of an indebtedness from George H. Palmer, the plaintiff's assignor, to the respondent, Ann Palmer, his mother; and the question litigated upon the trial was whether the amount of such indebtedness, for which the defendant was entitled to hold a certain life insurance policy as collateral security, was $16,500, as the defendant claimed, or only $12,500, as claimed by the plaintiff. The determination of this question depended upon the view which should be taken of the proof in regard to certain payments made by George H. Palmer, during his life-time, to his mother. Mr. Palmer was a stock-broker. In his books there were two accounts, containing entries in reference to his indebtedness to the defendant. One of them was an account of the principal. The other was a monthly interest account in which there was entered every month the amount of interest paid or credited to any person whose money he had. From 1881 to 1885 he paid by check to the order of his mother about $162 a month, and caused these payments to be entered in the interest account. They are not referred to, however, in any manner in the account of the principal. After September, 1885, down to the time of Mr. Palmer's assignment in August, 1886, these payments were

reduced to $100 a month. The claim of the plaintiff is that the monthly payments of $162 were payments in excess of interest, and that the excess should be applied to reduce the amount of defendant's claim for principal. The trial court held that these payments were not established by competent or sufficient evidence, and that, even if they were, the excess was intended, not as a payment of interest, but as a filial contribution to the mother's comfort. So far as proof of the payments is concerned, we think the learned judge must have overlooked the testimony of the defendant herself, who, when examined in her own behalf, expressly admitted that her son paid her $162 a month, from September, 1880, until 1885, saying: "Yes, sir; he paid that. That amount was a little more, of course, than the interest due me would have amounted to." We agree with the court below, however, that there is a preponderance of evidence against the proposition that these payments were made to any extent on account of the principal debt due to the defendant from her son. The learned counsel for the appellant argues that the presumption is against the view that the excess was a mere gratuity, inasmuch as the law will not suffer one to be generous before he is just, and where there is an indebtedness will presume that a payment is made in discharge of such indebtedness, rather than as a gift. But, even if we start with these presumptions in the present case, they are overcome by the evidence, which is clear and distinct, to the effect that Mr. Palmer did not intend to pay, or suppose he was paying, anything more on account of the debt to his mother than the interest thereon. It would be unreasonable to hold that he would have omitted all reference in his books to any payment tending to reduce the principal, if the payment was made for that purpose, when his books contained an account especially devoted to the transactions relating to that principal. Indeed, it seems to us that the books of the assignor, upon which the plaintiff relies, furnish the most cogent proof against him. They really afford the only light we have as to the intention of the plaintiff's assignor in making the payments in question, and by expressing such payments to be made for interest they negative the idea that he meant by making the same to reduce his mother's claim against him on account of the principal debt. We think the judgment was right, and should be affirmed.